SAVOY, Judge.
This is a suit in workmen’s compensation. On November 22, 1952, the plaintiff, Pershing Reed, sustained a compound fracture of the right femur, when struck by the leader tongs on a drilling rig. At the time, the plaintiff was employed as a roughneck by H. L. Rowley, Inc., who held a workmen’s compensation policy with the defendant-appellant, The Fidelity and Casualty Company of New York. Judgment was rendered awarding plaintiff compensation at the rate of thirty dollars per week, for the duration of disability, not exceeding 400 weeks, subj ect to credit for amounts previously paid, with interest on each past due installment, and for medical expenses not to exceed $1,000, and costs.
The sole question before us on appeal is whether or not plaintiff is totally disabled under the Compensation Act, LSA-R.S. 23:1021 et seq. The defendant contends that the plaintiff, “after recovering from the injury and being rehabilitated, returned to his former employment with his former employer and performed his duties in a like and similar manner as he had in the past, from a period beginning August 2, 1953, through and ending October 1, 1953.”
The evidence shows that plaintiff was taken to a hospital in Ville Platte, Louisiana, following the accident where he was placed in traction by Dr.-Charles Aswell. On December 1, 1952, an operation was performed by Dr. T. E. Banks, assisted by Dr. Charles Aswell. This operation was an open reduction on the femur, and a Hanson Street nail was inserted into the femur, with one screw fixed across the fracture side. Reed remained in the hospital for a total of 31 days, then in bed at home for an additional two weeks after which he used crutches for approximately five and one-half months.
Dr. T. E. Banks, orthopedic surgeon of Alexandria, Louisiana, after the operation next saw the plaintiff on May 7, 1953, and on seven other occasions, the last being October 2, 1954. On the basis of muscle weakness and shortening of the right leg, he testified that Reed had a 15 per cent permanent disability in the use of his right leg. However, Dr. Banks concluded that Reed was able to perform the duties of a roughneck since August 2, 1953.
Dr. James Gilly, orthopedic surgeon of Lafayette, Louisiana, examined the plaintiff on June 7, 1954. A pertinent part of Dr. Gilly’s deposition begins on Page 142 of the transcript:
*467 “Q. Dr. Gilly, what was your overall findings insofar as this man’s ability to perform gainful employment as an oil field worker at the time of this examination? A. I thought he was probably still disabled at the time I saw him.
“Q. What were your basis for this findings? A. The shortening and the popping of the knee, which although I found nothing definite, I felt warranted further observation or could possible continue to work under treatment, but that he would not be away from his doctor completely.
“Q. Doctor Gilly, assuming that this man, after the operation, that this man, Pershing Reed and prior to your examination worked approximately 44 days in oil field work doing the same type of work he had done before with no great complaints and was laid off because of the needlessness of work at the time, would you think from the fact that he did perform this labor, would lead you to believe that he had fairly well rehabilitated himself? A. If he was able to perform this labor without complaints without any development of further findings which were brought to me, I would feel that he was rehabilitated.”
In response to a question as to length of rehabilitation, Dr. Gilly answered on Page 146 of the transcript:
“A. I think with exception of his complaint in regard to the knee he probably would be completely rehabilitated and if he was able to work, he would be ready to work when his attending physician said he could, or about the time I saw him during that period of 2 to 4 months.”
Dr. Blaise Salatich, orthopedic surgeon of New Orleans, examined the plaintiff on March 25, 1955, and June 2, 1955. He testified to grating and snapping sensations in the plaintiff’s knee, tilting of the pelvis to the right, atrophy of the right leg, difference in measurements of two legs, and one inch shortening of the right leg. Dr. Salatich felt that plaintiff must have worked in pain in 1953. He concluded that plaintiff was permanently disabled and could not perform the labor required of a roughneck:
“Q. Based on your two examinations and a consideration of the physical findings and so forth present, what is your opinion as to whether or not this man will be able to return to his former occupation as an oil field roughneck ?
“A. Considering the physical requirements of an oilfield roughneck and a rig worker, I would say this man is considered unable to return to such occupational duties in reference to comfort, efficiency and safety and not only for himself, but for his fellow workers.
“Q. Do you anticipate any change in the future, based on your examination which will enable him to return to that type of work?
“A. No, as stated in my testimony, I think that nature, besides excellent orthopedic care, nature with two and one-half years of time in order to rehabilitate, as we all must acknowledge nature is the greatest of all healers, that in approximately two and one-half years period of time, nature has just about reached the end of its rope and that any improvement of a significant nature must be considered to be ortho-pedically impossible in the future.”
The lay testimony is also conflicting. The testimony of the plaintiff, his neighbors and three co-workers support his contention that he is disabled and cannot perform the work he previously did. This evidence indicates that he was not really able to perform the duties of a roughneck during the time he worked in 1953.
The testimony of the driller and one other co-worker introduced by the defendant is *468 to the effect that the plaintiff limped but performed his duties as a roughneck without complaint. It is noted that these two workers had been employed by H. L. Row-ley, Inc., for a number of years and were still so employed at the time of the trial, whereas, two of the co-workers who testified for the plaintiff “were run off the job” and the other “quit”.
We conclude that the medical testimony was in conflict and the lower court properly also considered the lay testimony. In the case of Fourchea v. Maloney Trucking & Storage, Inc., La.App.Orleans, 1956, 88 So.2d 82, 86, the Court stated:
“According to our appreciation of the record, there is not the ‘one-sidedness’ in the expert testimony as is alluded to by counsel for defendant. What we find is that the defendant was able to and did produce three physicians who swore that the plaintiff is not disabled whereas plaintiff only had one medical expert to testify on his behalf. But this does not mean that because defendant was able to present the evidence of the greater number of experts that their testimony should be accepted and that the testimony given by plaintiff’s lone expert should be rejected. Courts have said time after time that witnesses are not counted, rather their testimony is weighed. * * *
* * * * >!< *
“The Supreme Court has laid down a formula for determining whether a judgment is to be reversed when there exists an irreconcilable conflict in the testimony. Where there is this conflict the reviewing court is not to reverse the trial court’s judgment when the evidence of the successful party, if considered by itself, is sufficient to sustain the judgment. Rhodes v. Sinclair Refining Co., 195 La. 842, 197 So. 575.
“In an earlier case, Thomason v. Kansas City Southern Ry. Co., 122 La. 995, 48 So. 432, the Court said in effect, if there be testimony in the record which, if believed, would justify the conclusions of the trial judge touching a certain fact, conclusions in respect to that fact will be adopted unless manifestly erroneous.
* * # * * Jfc
“If we use the formula set forth in Rhodes v. Sinclair Refining Co., supra, we would have before us the testimony of Dr. Salatich and the lay witnesses, and this taken by itself would present a perfect case for the plaintiff, as the testimony goes to show beyond any doubt that he sustained a serious injury which still exists and which has destroyed his physical ability to return to his occupation.”
The record reveals that plaintiff was complaining that the nail inserted in the femur was hurting him. He went to Dr. Banks office for the purpose of having the nail removed. Dr. Banks commmenced the operation, but did not remove the nail. We feel that had plaintiff not been in pain, he would not have insisted on and submitted to this operation. This Court does not believe that plaintiff could do roughneck work after the accident.
After reviewing the medical evidence as well as the lay testimony, we have reached the conclusion that there is sufficient evidence to support the decision of the trial judge. We find no manifest error in the ruling of the trial judge.
For the reasons assigned herein, the judgment of the district court is affirmed.
Affirmed.