SAVOY, Judge.
This is a suit in workmen’s compensation. On January 15, 1964, the plaintiff, R. L. Ware, sustained an injury to his back while employed as a welder for defendant, J. Ray McDermott and Co., Inc., who held a workmen’s compensation policy with the co-defendant, The Travelers Insurance Company.
The district court rendered judgment awarding plaintiff full benefits under the Act, less a credit for amounts previously paid. From this judgment, the defendants have appealed to this Court.
The sole issue before us on appeal is whether or not plaintiff was totally disabled under the provisions of the Workmen’s Compensation Act subsequent to March 15, *574 1964, the date through which plaintiff-was paid compensation payments.
The record shows that plaintiff sustained the injury to his back as he was welding within a 32-inch pipe. He was using an electric welding machine, half sitting in a ■cramped position within the pipe, and felt .a popping sensation to his back as he started to weld above his head. He felt pain immediately, crawled out of the pipe, and reported the incident to his foreman. For the remaining hour or two of the day, he was placed on lighter work, which did not require any bending.
Plaintiff had trouble with his back all that night and was hardly able to walk the following morning. His employer sent him to Drs. C. G. Whitley and Melvin G. Bourgeois of Morgan City for treatment. These two doctors practice together in a •clinic and both followed plaintiff’s treatment in Morgan City. Both are general practitioners.
Dr. Melvin G. Bourgeois testified that he ■examined plaintiff on about January 17, 1964. He found plaintiff to have acute pain in his low back, with muscle spasm, and made a diagnosis of lumbosacral sprain. He hospitalized plaintiff from January 17, 1964, to January 23, 1964, placing him in traction approximately two-thirds of the time and administered medications. While in the hospital plaintiff was also treated for prostatitis. Dr. Bourgeois found no obvious pathology demonstrated in the X-rays which were taken. It was Dr. Bourgeois’ opinion that plaintiff was still disabled at the time he was released from the hospital, but that he should have recovered from the back sprain within two to six weeks thereafter.
Dr. C. G. Whitley followed plaintiff’s course of treatment in the hospital jointly with Dr. Bourgeois. He first examined plaintiff in the hospital on January 18, 1964, and found plaintiff to have an acute spasm •of the lumbar muscles in his back, compatible with a lumbosacral sprain. Dr. Whitley testified he did not see any fracture or other evidence of pathology in the X-rays taken of plaintiff’s back: It was Dr. Whitley’s opinion that plaintiff should have recovered from his back injury in two or three weeks after his release from the hospital.
After his release from the hospital in Morgan City, plaintiff returned to his home in Oakdale, where he sought the services of his family physician, Dr. Rigsby Har-grove. Dr. Hargrove, a general practitioner, testified he saw plaintiff on January 27, 1964, and found him to have extremely severe pain in the lower part of his lumbar spine, with pinpoint tenderness over 1^5 and S^l, with a rather marked muscular spasm overlying the area. His original diagnosis was a severe lumbosacral strain. He admitted plaintiff to a hospital for treatment, applying traction for two hours twice daily, and gave medication in the form of sedation and muscular relaxants. He also applied ointments, and gave plaintiff ultrasonic treatments and diapulse, which is a vibration-type treatment. Plaintiff remained in the hospital on this visit from January 27, 1964, to February 3, 1964. On February 11, 1964, Dr. Hargrove fitted plaintiff with a corset-type brace. Plaintiff was instructed to sleep on a firm bed and was given a traction device for home therapy treatment. He was also continued on medication, and the application of ointments. Since plaintiff did not respond satisfactorily to the treatments, Dr. Har-grove referred plaintiff to Dr. Paul M. Davis, Jr., an orthopedic surgeon of Alexandria, Loitisiana, for consultation. Dr. Hargrove received a report from Dr. Davis which gave the diagnosis that plaintiff had a non-united fracture of the distal spine, which was symptomatic; and, suggested that an injection of local anesthetic be made about the fracture to confirm the diagnosis. If such an injection knocked out all pain for the period of the anesthesia, and if the condition continued to be symptomatic, then it was recommended that surgery was indicated to remove the tip of the spine of the *575 fifth lumbar vertebra. Dr. Hargrove reexamined the X-rays he had taken January 27, 1964, and found the fracture reported to him by Dr. Davis. He placed plaintiff in the hospital from May 31, 1964, to June 4, 1964, to perform the instillation of the anesthetic. The test proved positive. After the test, Dr. Hargrove supplemented his original diagnosis to also include a fracture of the distal spine of the fifth lumbar vertebra, symptomatic. Dr. Har-grove strongly recommended surgery for the correction of plaintiffs condition, and was of the opinion that the operation would be successful. He estimated that plaintiff would have to remain in the hospital about a week after the operation and would be rehabilitated in approximately four to six weeks thereafter.
Plaintiff was again hospitalized for a four day period in September, 1964, when he had recurrence of severe pain in his back. At this time he was also treated for another condition that was not connected to the bade injury. Dr. Hargrove testified that he has continued to see plaintiff regularly and at the last visit shortly before the trial, plaintiff was still complaining of not being able to bend and of having difficulty sleeping at night because of pain. Dr. Hargrove testified that the pain had always been localized in the same area, L-S and S-l, at the time of all examinations. He testified that he had known plaintiff all of plaintiff’s life, had treated him for several years prior to the injury, and that plaintiff had never had anything wrong with his back. He felt plaintiff was disabled from performing heavy manual labor, had been so disabled since he saw him on January 27, 1964, and would remain disabled until the operation was performed. He testified that if the condition shown on the X-rays was an epiphysis, which is a developmental condition, rather than a fracture, he felt the condition had been aggravated so as to cause it to become symptomatic. He was of the opinion that plaintiff needed surgery regardless of whether the condition was a congenital defect that had been aggravated or whether it was a non-united fracture.
Dr. Paul M. Davis, Jr., an orthopedic surgeon, of Alexandria, examined plaintiff on April 8, 1964, at the request of Dr. Har-grove. He found plaintiff showed stiffness in his back from L-3 down through D-5 and S-l, and there was well localized pain on palpation over the lumbosacral joint, between L-5 and S-l, of plaintiff’s back. An X-ray examination revealed a translucent line which appeared to be an old fracture of the tip of the spine of L-S, with a very definite margin to the fragment on the distal tip of the spine. His diagnosis was a fracture of the distal spine of the fifth lumbar vertebra with non-union, being symptomatic. This type fracture is usually caused by direct trauma. Dr. Davis was under the erroneous impression that the accident occurred in June, 1963. He testified that the appearance of the translucent line shown on the X-rays showed the margins were smooth and not sharp, which indicated the condition was one of long standing, and that if plaintiff’s injury occurred in January, 1964, rather than June, 1963, he would discount the possibility of the condition being a fracture. In such case, he felt the condition shown on the X-rays was more likely a lack of union of a fragment of the bone, which had become symptomatic. It was his opinion that plaintiff had received an injury between the two fragments, regardless of whether the condition shown in the X-rays was considered a fracture or whether it was considered an epiphysis, which is a congenital defect, and he felt the plaintiff had symptomatic pain between the two fragments. Dr.. Davis indicated that should the condition become asymptomatic, there would be a good chance the condition would be reinjur-ed by the bending and straining necessary in heavy manual labor, and would become symptomatic again. In view of this, and since the condition would be very easy to remove, Dr. Davis felt if he continued tO' have pain and stiffness in his back, plaintiff should take the operation. He did not *576 believe plaintiff could perform manual labor at the time of his examination. Without surgery, he thought the condition could last a long time, from a few months up to a year or more. With surgery, plaintiff could return to work after allowing approximately two weeks for the healing process and then several weeks for exercises to regain the strength in his back.
Dr. Jerome W. Ambrister, an orthopedic surgeon of Lake Charles, examined plaintiff on March 13, 1964, and on July 1, 1964, at the instance of the defendants. On March 13, 1964, he found plaintiff’s back to be entirely normal from an objective point of view, and was unable to explain a basis for the plaintiff’s complaints. It was his opinion that plaintiff had probably recovered from the straining injury of his low back region. He testified the X-rays taken on July 1, 1964, revealed a translucent line across the spinous process of the fifth lumbar vertebra, and it was his opinion that this represented a persistent epiphysis of this process, which is developmental in nature and not traumatic in origin, which was of long duration, and which should be asymptomatic. He indicated that such fractures of the spinous processes are usually incurred by direct trauma. During his examinations of plaintiff, 'Dr. Ambrister found some conflict in the subjective symptoms exhibited by plaintiff on forward flexion of his bade when standing as compared to such forward flexion when seated but he felt plaintiff was sincere in his complaints and was not exaggerating. He testified that if the epiphysis in plaintiff’s back had become symptomatic through trauma, that it should have healed by a fibrous union and should not have caused any discomfort after a period of about six months. He stated the treatment for nonunion of the fracture of a spinous process, which did continue to be painful, was surgery for the removal of the tip of the spine of the vertebra. It was his opinion that plaintiff was able to return to his previous employment at the time of both examinations.
Dr. Charles V. Hatchette, an orthopedic surgeon of Lake Charles, examined plaintiff on December 8, 1964, at the instance of the defendants. He testified that he was unable to find any injury to the plaintiff’s back region. On examination of X-rays, Dr. Hatchette found what appeared to him to be an old epiphysitis of the fifth posterior spine, which he considered to be of no significance. He testified that it would be very unusual for a fracture to occur in this area without a direct trauma, and that he could find no evidence that plaintiff was experiencing any pain. It was Dr. Hatch-ette’s opinion that plaintiff had long since recovered from any back strain received in January of 1964, and that on the basis of the examination he gave plaintiff, he would pass plaintiff on a pre-employment physical examination. He felt plaintiff could return to work without any further treatment.
As to the lay testimony, the testimony of plaintiff, his wife, his brother and five other relatives and neighbors, supported the plaintiff’s contention that he had never before had any trouble with his back, but that since the injury in January of 1964, he has been disabled. It was shown that he was constantly troubled with his back and had taken regularly treatments and medications to relieve the condition through the time of the trial.
The record also shows that plaintiff has not worked since the accident although he was in dire need of financial assistance and was living with his brother who receives welfare assistance. Plaintiff is 23 years of age and married. It was established that plaintiff had been a good steady worker and had never been injured before. Plaintiff testified he wanted to go back to work and was willing to have the operation.
In reaching its decision, the district court was impressed with the testimony of Dr. Hargrove and Dr. Davis, and considered that the opinion of these attending physi *577 cians was entitled to greater weight than the opinions of the specialists who examined plaintiff but one or two times. In its written reasons, the district court indicated that the medical evidence shows plaintiff needs an operation whether his back condition was caused by a fracture or whether it was an epiphysis which was aggravated and made symptomatic. The district court thought it significant that Dr. Bourgeois and Dr. Whitley failed to find evidence of either a fracture or an epiphysis in the examination of X-rays, and considered that this indicated the condition was not a congenital one but was rather a fracture, since fractures are hard to detect immediately after an accident, but become easier to detect after the passing of time. The district court also considered the lay testimony in reaching its decision, since there was a conflict in the medical evidence.
In reaching our decision in this case, we must follow the guidelines laid down by the Supreme Court. Where there is a conflict in the evidence, the reviewing court should not reverse the judgment of the district court where there is evidence in the record which, when reasonably construed, supports the conclusions reached by the district judge. See Reed v. Fidelity and Casualty Company of New York (La. App., 3 Cir., 1960), 125 So.2d 465, and cases therein cited.
After carefully reviewing the medical evidence as well as the lay testimony in this case, we find that there is sufficient evidence in the record to support the well-considered conclusions reached by the district court, as expressed in the written reasons for judgment. Accordingly, we find no manifest error in the ruling of the district court.
For the reasons assigned, the judgment of the district court is affirmed at appellants’ cost.
Affirmed.