FRUGÉ, Judge.
This is a suit for workmen’s compensation benefits brought by Floyd J. Bouley against Fidelity and Casualty Company of New York, the insurer of his former employer, Delta Drilling Company. The trial court awarded plaintiff compensation for total and permanent disability at the rate of $35.00 per week for a period not to exceed 400 weeks.
Defendants have taken a suspensive appeal from this judgment, alleging that plaintiff has not proven his case by a preponderance of the evidence to justify the lower court’s award.
Plaintiff was employed as a roughneck by Delta Drilling Company, but at the time of the accident the drilling operation had ceased on the well he had been working on and he was assigned to watchman’s duties.
During the morning of February 20, 1965, the toolpusher for Delta Drilling, Mr. Billy Johnson, arrived at the drilling site to supervise the unloading of an electrical motor which had been repaired and was being returned to the rig by truck. Plaintiff was assisting the toolpusher in guiding this heavy piece of equipment which was being pulled into a utility room for storage. In order to move this motor from where it had been unloaded near the truck to the utility room, it was necessary to slide the motor along the board run with a cable hooked to the winch on the truck. Plaintiff had placed a five-foot iron bar under the motor slides in order to facilitate its movement over the board run. The iron bar, however, became jammed or caught on the board run and plaintiff testified he was-instructed by Johnson to “try to get the bar out,” and when he did, he immediately felt a hot pain in his back, accompanied by complete weakness, so he dropped the lifting bar and, at that time, complained to the toolpusher that he had hurt his back and was feeling weak. Plaintiff admitted that although he felt this burning pain in his back, he continued to assist the toolpusher to guide the motor but that the toolpusher then had to do most of the work. Plaintiff remained on the job until relieved that afternoon by a Mr. Joe Cloud. Plaintiff *422 testified that after the accident and after the motor had been stored, Mr. Johnson told him not to do any more work that day, so he lay down in the “pusher’s shop” until relieved.
Mr. Johnson’s testimony of the facts surrounding the accident is similar to plaintiff’s testimony but for two points: Johnson testified he did not instruct plaintiff to attempt to remove the bar from beneath the heavy motor, but that plaintiff did this on his own volition; he further testified he did observe plaintiff’s attempt to pick up the bar from beneath the motor but plaintiff was not able to lift it and at this time plaintiff did not complain to him of any accident. Johnson testified that after plaintiff unsuccessfully attempted to lift the bar, he (Johnson) went to his truck to get another bar and upon his return plaintiff for the first time complained that he had injured his back while lifting the bar. It was Johnson’s conclusion that plaintiff must have attempted to lift the motor a second time while he was not present, and in so doing, injured himself. Johnson admitted he told plaintiff to take it easy for the rest of the shift and verified that plaintiff did little of the rest of the work.
On March 2, 196S, ten days after the accident, Johnson filed the accident report.
Plaintiff was relieved from his watchman’s duties at 4:30 P.M. by Mr. Joe Cloud, a driller. Before leaving the job, plaintiff told Mr. Cloud he had hurt his back while attempting to remove the bar from beneath an electrical motor. Plaintiff returned home but later that evening he was driven by his wife and a relative to the office of Dr. Louis E. Shirley, Jr., due to the continuing pain in his back.
Dr. Shirley diagnosed plaintiff’s problem as a back strain and gave him medication for his pain. Dr. Shirley also recommended heat and muscle relaxants. On the 23rd of February, 1965, plaintiff returned to Dr. Shirley’s office for sound wave treatment and was examined by Dr. Harlie Bearden, an associate of Dr. Shirley.
Plaintiff, on the advice of Drs. Shirley and Bearden, returned to work continuing his assigned duties as a watchman during the rigging-down process while the rig was being prepared for movement to Marks-ville, Louisiana. After the rig was moved, plaintiff assisted in the rigging-up in Marksville, but testified he did not attempt any heavy work which would have put a strain on his back. After the rig was set up, he continued his assigned duties as a roughneck. Throughout this time after returning to work, plaintiff stated he continued to suffer pain and discomfort in his back and always called upon fellow workers to assist him if any heavy lifting was required. On April 6, 1965, plaintiff was laid off work for a 13-day period for failure to follow a particular safety rule. He returned to work on or around April 19, 1965, and subsequently, within two weeks, was permanently laid off by his employer.
During the period that he was discharged for failure to follow a safety rule, he returned to Drs. Shirley and Bearden for treatment for the continuing pain he had in his back.
Shortly after his employer permanently discharged plaintiff, he went to Ochsner Clinic in New Orleans for an examination and evaluation of his back. Dr. Homer T. Kirgis examined plaintiff on May 28, 1965; again on September 17, 1965, and on September 20th had his associate perform a discography procedure on plaintiff.
Dr. Kirgis testified that the first clinical examination suggested to him that the plaintiff had suffered an injury to the lumbosacral intervertebral disc. However, at this time the doctor suggested a conservative treatment be followed for two to three months and, after this time, for plaintiff to return for a re-evaluation. After this period, Dr. Kirgis stated he found no improvement and recommended *423 the discography of the lower three lumbar intervertebral discs as a diagnostic procedure. The discogram was performed by an assistant of Dr. Kirgis under the doctor’s supervision on September -20, 1965. Dr. Kirgis testified the discogram conclusively proved a herniated disc. It was this doctor’s positive testimony that the discogram performed on plaintiff showed a slight to medium ruptured disc at the fifth lumbar level. Dr. Kirgis concluded his testimony by stating that he might possibly be able to return to work within three to six months but the rupture would not heal and it might become asymptomatic.
Dr. Louis Shirley, Jr., who examined plaintiff on the date of the accident and only that one time, was of the opinion that plaintiff had just sprained some muscles in his back and would not be forced to lose time from his work.
Dr. Harlie Bearden, a general practitioner and the associate of Dr. Shirley, saw plaintiff twice. He first diagnosed plaintiff’s injury, basing said diagnosis on plaintiff’s subjective complaints, as a questionable acute lumbosacral sprain. This doctor was unable to detect a ruptured disc from his clinical examination.
Plaintiff was examined by Dr. Earl Rafes, a neurosurgeon, at the request of the defendant on August 7, 1965. Dr. Rafes found plaintiff not to be disabled and was of the opinion he should be able to return to his former occupation as a roughneck. He attributed plaintiff’s subjective pain to a postural problem, not to a ruptured disc, which he concluded was not present. Dr. Rafes’ opinion of the X-rays taken was that they only showed a slight narrowing of the lumbosacral interspace, on which he placed little significance. The doctor did recommend that plaintiff should be given a myelogram for his own protection.
Dr. George P. Schneider, a Lake Charles orthopedist, examined plaintiff once on August 24, 1965. He was of the opinion that plaintiff suffered a back strain and suggested that as an out-patient following conservative medication, complete rehabilitation was possible and could be achieved within three months with no residue disability resulting. Dr. Schneider, however, having no special training in discography, did not feel himself qualifed to pass on the X-rays or the discograph. He did feel that he was qualified, however, to pass on the interpretation of such an X-ray and stated that the large amount of opaque dye indicated a herniated disc as opposed to being extravasation.
In reaching its decision the district court was impressed by the positive testimony of Dr. Kirgis, who supervised the discogram and who is a well-known specialist in this field. It was his expert opinion that the discogram was performed properly and that its reading showed a small to medium herniation of the disc, although the other doctors who saw or examined the plaintiff were of the opinion that plaintiff was not suffering from a ruptured disc but from a sprain. This court, agreeing with the district court, feels the opinion of Dr. Kirgis is entitled to the greater weight, rather than the opinions of the other doctors who examined plaintiff but once or twice.
We believe there can be little doubt but that the injury was a job-connected one and the record supports plaintiff’s explanation of how, when and where it happened. The demeanor of the plaintiff was one of complete honesty and sincerety, as the record clearly shows. His job record and his age indicates to us that this man would not give up a well-paying job and go through the painful medical treatment in order to be able to receive workmen’s compensation.
The Supreme Court has laid down the guidelines we must follow in reaching a decision where there is a conflict of evidence. The reviewing court should not reverse if there is a conflict of evidence if the judgment of the district court is sup *424 ported by evidence which, when reasonably construed, supports the district court’s conclusion. See Ware v. J. Ray McDermott & Company, La.App. 3 Cir., 180 So.2d 573; Reed v. Fidelity & Casualty Co. of N. Y., La.App. 3 Cir., 125 So.2d 465.
As has already been said, only one of the five doctors who examined plaintiff positively found that he suffered a ruptured disc. This court has long followed the jurisprudence that in determining medical issues involved, where there is a conflict of opinion as to the type of injury or extent of injury, the number of medical witnesses testifying for the plaintiff or for the defendant is not necessarily controlling. This court is obligated, as all courts are, to seek the truth and evaluate the medical witnesses, using the same methods that apply to other witnesses. See Page v. Home Indemnity Co., La.App. 3 Cir., 168 So.2d 409; Williams v. Southern Advance Bag and Paper Co., La.App. 2 Cir., 87 So.2d 165.
The record contains sufficient evidence to support the well-written opinion of the district court that the plaintiff had borne the burden of proving his case within a reasonable certainty by a preponderance of the evidence. A greater obligation of proof is not required or necessary.
For the foregoing reasons, the judgment of the district court awarding plaintiff compensation at the rate of $35.00 per week for the duration of his disability, but not to exceed 400 weeks, is hereby affirmed, the cost of this appeal to be taxed to the appellant.
Affirmed.