BARNETTE, Judge.
Plaintiff, Peter Smith, Jr., an unskilled laborer, brought suit against Highlands Insurance Company, the workmen’s compensation insurer of S. K. Whitty & Company, seeking benefits of $35 per week for 400 weeks, less a credit for compensation previously paid, and for medical expenses, penalties and attorney’s fees. He alleged that he has sustained total and permanent injuries as the result of a job accident when a large clump of mud fell into a hole in which he was working and struck him on the neck and shoulders causing him to sustain a rupture of the cervical spine. The district court rendered judgment allowing plaintiff an additional 20 weeks of compensation at $35 per week over and above the previous compensation benefits paid by defendant. From this judgment plaintiff has appealed seeking judgment for total and permanent benefits.
The primary question presented by this case is one of fact. We cannot improve on the trial judge’s summary of the testimony in his “reasons for judgment” and adopt the same in full as follows:
“This is a workmen’s compensation suit instituted by Peter Smith, Jr., against Highlands Insurance Company, who was the compensation insurer of S. K, Whitty & Co. Plaintiff sustained an injury on October 20, 1966 while working for S. K. Whitty & Co., as a construction laborer. He .was paid compensation benefits at the rate of $35.00 per week from November 23, 1966 through December 13, 1966, together with all medical expenses incurred by him for treatment of his injury. Plaintiff contends that he is still disabled as of the date of trial (Feb. 20, 1968) and that he is entitled to recover compensation benefits based on total and permanent disability, subject to credit for payments which have been made. Defendant contends that plaintiff had fully recovered from his injury by the time the payment of compensation benefits was discontinued on Dec. 13, 1966.
“The record reveals that plaintiff was injured on Oct. 20, 1966 and while the injury was reported to his employer on that day, he did not seek medical attention until the next day. At that time his major .complaint was bleeding from the rectum which proved not to be caused from the accident; however, he also reported paid to his upper back and right shoulder. He continued to work until Nov. 15, 1966, at which time he returned to his treating physician, Dr. Dabney M. Ewin, who treated him from Nov. 16 through Dec. 13, 1966. Dr. Ewin found no muscle spasm or other objective findings to substantiate complaints of plaintiff. X-rays taken in his office on Nov. 16 revealed that the 6th vertebra (C6) was smaller than the others and that there was a narrowing of the space between the 6th and 7th vertebrae (C6 & C7) but he considered that this was *542 caused from a degenerative disorder which antedated the accident. On Dec. 7, 1966, Dr. Ewin referred plaintiff to Dr. Russell C. Grunsten for an orthopedic evaluation and upon receipt of this report which confirmed his opinion, he felt that Smith had fully recovered on Dec. 13, 1966 and accordingly discharged him as able to return to work on that date. Dr. Ewin saw plaintiff again on Nov. 6, 1967 at the request of Dr. Grun-sten and after reviewing new X-rays which had been taken, concluded that the degenerative condition previously noted had not worsened during this period. It was therefore his opini'on that there had been no aggravation of plaintiff’s condition as a result of the accident of Oct. 20, 1966 and that he had sustained only an ‘inconsequential’ injury.
“Dr. Russell C. Grunsten, orthopedist, was called by defendant. He saw plaintiff on two occasions: Dec. 6, 1966 and Nov. 6, 1967. Dr. Grunsten found no muscle spasm or other objective findings on either of these occasions except X-rays revealed that the 6th vertebra (C6) was smaller than the others and that the space between the 6th and 7th vertebrae (C6 & C7) was narrower than the other interspaces. His opinion was that this was caused from degeneration — wear and tear. He concluded after his examination of Dec. 6, 1966 that Smith could return to work from an orthopedic point of view and reported his findings to plaintiff’s treating physician, Dr. Ewin. On his second examination of November 6, 1967, Dr. Grunsten found no enlargement or increase in the osteoarthritic condition as revealed by new X-rays compared with the ones previously taken and concluded that there had been no aggravation of plaintiff’s condition as a result of the accident of Oct. 20, 1966.
“Dr. Roy Haddad, orthopedist, was called by defendant. He treated plaintiff for an injury to his low back which he sustained on June 2, 1967 while employed as a laborer for the Sewerage & Water Board. During the course of his treatment, plaintiff was hospitalized from Aug. 5 to Aug. 18 and was discharged on October 3, 1967. Dr. Had-dad testified that during the entire period in which Smith was under his care for his low back injury he never complained about any pain to his neck, shoulder or arm.
“Dr. Richard Levy, neurosurgeon, was called by defendant. He saw plaintiff on Nov. 6, 1967. He concluded that there was no neurological basis for plaintiff’s complaints and felt that he could return to his normal occupation.
“Dr. Irving Redler, orthopedist, was called by defendant. He examined plaintiff on Nov. 21, 1967. He found no objective findings except X-rays revealed that the 6th vertebra was smaller than the others and the space between the 6th and 7th vertebrae was narrower than the other interspaces. His conclusion was that these abnormalities were not the result of a compression injury but were the result of development of this vertebra. He felt that plaintiff had sustained a contusion of the neck with no functional impairment or disability. He further felt that plaintiff was able to do any kind of work.
“Dr. Vernon R. Kroll, general surgeon, was called by the plaintiff. He examined plaintiff on three occasions: Jan 25, 1967, May 24, 1967 and Feb. 16, 1968. In his examination of Jan. 25, 1967 he felt that the X-rays revealed that C6 and C7 were smaller than the other vertebrae and spaces between C6 and C7 and between C4 and C5 were narrower than the other interspaces. He further found a straightening of the lor-dotic curve as well as muscle spasm. His opinion was that the changes predated the injury but were trauma aggravated. His opinion was that plaintiff’s complaints were caused either as a result of protruding disc or impingement of the nerve resulting from aggravation of an *543 osteoarthritic condition. As a result of his Feb. 16, 1968 examination, Dr. Kroll concluded that plaintiff was a suspect of having a herniated disc disease and considered him disabled to perform manual labor.
“Dr. Homer D. Kirgis, neurosurgeon, was called by plaintiff. He examined plaintiff on Feb. 7, 1968. His X-ray findings were that both C6 and C7 were smaller than the other vertebrae and-the spaces between CS and C6 and between C6 and C7 were narrower than the other interspaces. His opinion was that plaintiff had two ruptured intervertebral discs which had occurred before the accident and felt that they might have to be removed in the future. He further felt that plaintiff could continue to work as a porter but could not perform heavy work until such time as plaintiff became asymptomatic or nearly asymptomatic. It was his opinion that plaintiff had suffered an aggravation of the preexisting condition.
“Plaintiff was employed as a laborer by the Sewerage & Water Board from May 3, 1967 to Oct. 17, 1967. On May 2, 1967 he had a preemployment physical examination by Dr. William Johnson. It is significant to note that plaintiff made no complaints at this time about his neck or shoulder nor did he include on his application any. reference to his injury of Oct. 20, 1966. It might also be observed that during the course of this examination, plaintiff had a positive reaction to the Wasserman test and was subsequently treated for syphilis. On June 2, 1967 Smith had an accident while employed with the Sewerage & Water Board and sustained injuries to his low back. He was treated for this injury by Dr. Johnson from June 2, 1967 to Oct. 13, 1967 at which time he was discharged as cured and able to return to work. During this period he saw Dr. Johnson some 38 times as well as receiving therapy only on 16 additional occasions. It is again significant to note that during this entire period, plaintiff made no complaints about his shoulder or neck to either Dr. Johnson or Dr. Haddad.
“Plaintiff testified substantially to the effect that he had pain and suffering in his neck, shoulder and arm as a result of injury on Oct. 20, 1966. He claims that this pain persisted even though he continued to work after the accident. He reported back to Dr. Ewin on Nov. 15, 1966. He was laid off his employment on Nov. 17, 1966 but continued treatment and was paid compensation until he was discharged by Dr. Ewin on Dec. 13, 1966 as able to return to work. He was then unemployed until hired as a laborer by the Sewerage & Water Board on May 3, 1967 where he remained until Oct. 17, 1967. He was again unemployed until employed by Sunbeam Bakery as a porter during November of 1967 and remained there until Feb. 7, 1968 at which time he quit. His testimony was to the effect that he continued to suffer pain to his neck, shoulder and arm during this entire period and that he is still suffering as of the date of trial (Feb. 20, 1968).
“Mr. Leandrew Thomas, labor foreman for S. K. Whitty & Co., testified that Smith was employed under his supervision and while he had been im-formed of the accident on Oct. 20, 1966, Smith worked until Nov. 17, 1966 at which time he was laid off with other workers as the job was running out. He further testified that Smith had no complaints about his neck, shoulder or arm during this period and performed his work in the same manner as he did when he came to work.
“Mr. James M. Spencer, field superintendent, testified that the accident of Oct. 20, 1966 had been reported to him and that Smith continued to work after the accident until laid off on Nov. 17, 1966.
“After evaluating the testimony and other evidence adduced at trial the Court *544 concludes that the preponderance of medical expert opinion is that plaintiff’s 6th vertebra had a height less than those above or below and the space between the 6th and 7th vertebrae was narrower than the spaces between the other vertebrae. It is further concluded that the aforesaid •abnormalities existed prior to the accident of Oct. 20, 1966 and are the result of a degenerative condition. The Court does not accept the opinion that plaintiff had two preexisting ruptured interverte-bral discs which were aggravated as a result of the accident causing plaintiff to be totally and permanently disabled. The Court finds that while plaintiff had a preexisting osteoarthritic condition of the lower neck and the accident herein involved a contusion in this area, there was no permanent aggravation of this condition nor was there any nerve root involvement. The Court recognizes that a person who has been contused in an area that has an osteoarthritic condition takes longer to recover than a person without such a condition. Plaintiff was undoubtedly injured as a result of the accident of Oct. 20, 1966 and suffered substantial pain. The Court can accept the fact that plaintiff continued to work in this condition until he returned to Dr. Ewin for treatment on Nov. IS, 1966 and that he continued to be disabled during the period of treatment until date of discharge on Dec. 13, 1966. The Court can also accept the fact that plaintiff was disabled during the period from Dec. 13, 1966 until May 2, 1967 when he was employed by the Sewerage & Water Board as a laborer; however, at this point the Court concludes that plaintiff was no longer disabled within the meaning of the workmen’s compensation law. The weight of the expert medical testimony as well as the facts of the case support this conclusion. Plaintiff apparently worked well and without complaints from May 3, 1967 until his accident on June 2, 1967 wherein he sustained an injury to his low back. He was treated for this injury by Dr. Johnson who saw him on some 38 occasions as well as by Dr. Haddad. The treatment included hospitalization for nearly two weeks and covered a period of about four months. Plaintiff made no complaints about pain in his neck, shoulder or arm to these doctors during this entire period. Under these circumstances, it is inconceivable to the Court that plaintiff could have been disabled from the injury to his neck during this period. The foregoing facts confirm the Court’s conclusion that plaintiff recovered from his disability on May 2, 1967. Since plaintiff was paid compensation through December 13, 1966, the Court feels that compensation for temporary total disability should be allowed for an additional 20 weeks at the rate of $35.00 per week extending the period of compensation to May 2, 1967. The additional benefits for this period would be $700.00.
“For the foregoing reasons, the Court has rendered judgment in favor of plaintiff, Peter Smith, Jr., and against defendant, Highlands Insurance Co., for compensation in the sum of $35.00 per week for an additional 20 weeks, beginning Dec. 14, 1966, together with interest at the rate of 5% per annum on each of the weekly installments from its maturity until paid and for all costs.
“The Court further fixes the expert fees of Doctors Vernon R. Kroll and Homer D. Kirgis at $100.00 each.”
After a careful review of the pleadings, testimony and exhibits filed in evidence, we are in complete agreement with the conclusions reached by the trial judge. We stated at the outset that the question before us is purely and simply one of fact. The factual findings of the trial judge will not be disturbed in the absence of manifest error, and none can be found here.
The plaintiff has urged that the trial court erred in not recognizing the jurisprudential rule in our State that the positive findings of medical experts are to *545 be afforded greater weight than the negative findings as to the existence or not of a particular symptom. The plaintiff also calls the Court’s attention to the rule that a mere majority of expert witnesses is not sufficient for the determination of a decision in a workmen’s compensation case. We are in full agreement with the jurisprudential rules upon which plaintiff relies but there are many and varied rules and constructions of evidence that must be weighed in seeking a final determination of an issue and those cited by plaintiff are not necessarily the sole determinative factors in any case. Bouley v. Fidelity and Casualty Co. of New York, 189 So.2d 421 (La.App. 3d Cir. 1966) ; Ware v. J. Ray McDermott & Co., 180 So.2d 573 (La.App. 3d Cir. 1965) ; Reed v. Fidelity & Casualty Co. of New York, 125 So.2d 465 (La.App. 3d Cir. 1960); Williams v. Southern Advance Bag & Paper Company, 87 So.2d 165 (La.App. 2d Cir. 1956).
The plaintiff has also urged that the trial court erred in denying compensation benefits after the date of plaintiff’s employment by the Sewerage and Water Board on May 3, 1967, contending that such a ruling sets an undesirable precedent in that it allows an employer to escape the full consequence of an injury for which he is liable by proving that the employee has obtained other employment and returned to his accustomed work. While this argument may have merit in certain factual situations, it does not apply in this case. We are in complete agreement with the trial court that plaintiff received only a temporary total disability from which he had recovered on the date of his employment by the Sewerage and Water Board.
Plaintiff also argues there was error in the trial court’s judgment in that he was forced to work in considerable pain and therefore under our jurisprudential rules is entitled to be classified as totally permanently disabled. This, again, is a question primarily of fact to be determined by the trial court, and in this case we find no error.
The plaintiff’s complaints of continued pain are subjective. He produced no fellow workers nor other persons familiar with his activities to testify to any difficulty he had in performing the duties of employment. Furthermore, we attach significance to his failure to complain of neck and shoulder pains during the course of his treatment following his back injury on the Sewerage and Water Board job. In our opinion he has failed to prove by a preponderance of the evidence that the injury sustained on October 20, 1966, caused more than temporary disability.. The evidence produced has failed to convince us that his preexisting cervical abnormality has been aggravated as a result of the accident which forms the basis of this suit.
Accordingly, for the above-given reasons, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.