96 So.2d 91 (1957)
Faith Schack CROWTHER, Plaintiff-Appellee,
v.
C. H. FENSTERMAKER et al., Defendants-Appellants-Appellees.
No. 4418.
Court of Appeal of Louisiana, First Circuit.
June 4, 1957.
Rehearing Denied June 28, 1957.
Writ of Certiorari Denied October 8, 1957.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
*92 Davidson, Meaux, Onebane & Nehrbass, Lafayette, for plaintiff-appellee.
Adams & Reese, New Orleans, Pugh, Lanier & Pugh, Thibodaux, for defendant-appellee.
TATE, Judge.
The facts and legal issues as to liability are discussed in the companion case rendered this date, Guidry v. Crowther, La. App., 96 So.2d 71. For the reasons stated therein, we agree with the District Court's determination that defendants-appellants, the employer and liability insurer of Hebert, are solely liable; and that the suit should be dismissed as to Mrs. Crowther's husband's insurers.
Appellants alternatively urge that the damages of $70,000 awarded by the District Court for Mrs. Crowther's personal injuries are excessive in amount. (Special damages sustained by the Crowther community are awarded in the suit by present plaintiff's husband, Crowther v. Aetna Casualty and Surety Company, La.App., 96 So.2d 94, this date rendered.)
The record shows that Mrs. Faith Schack Crowther was, prior to the accident, an attractive and athletic young woman 26 years of age.
In the accident of June 7, 1954, both legs and her left hip were seriously fractured, the left thighbone being shattered by a compound comminuted fracture, as well as her body sustaining numerous generalized gashes and bruises. The impact and overturned car caused Mrs. Crowther's head to be caught outside and underneath the car door, her body "scrambled up inside" the vehicle; her agonized screaming attracted help so that the dirt was scraped away from her face to permit her to breathe. The car caught fire while Mrs. Crowther, fully conscious, was trapped beneath it; the fire was put out, and it took about ten men to roll the car from her body. She was in severe pain during this entire time and during the hour's wait for the ambulance, nor could this excruciating pain be relieved by more than slight sedatives (due to a minor heart condition attributable to rheumatic fever, for treatment of which the Crowthers had been en route to New Orleans at the time of the accident). She remained in this state until about 10:00 P.M. that night when, finally, the surgeon was secured to perform an open reduction operation both on the left thighbone, where two metal plates and ten screws were applied, and upon the left hip, where fixation was accomplished through two large metal screws. Her right leg was put in a complete cast.
From the moment of her collision on July 7, 1954, right up through her final operation of November, 1955, at the Mayo Clinic, Mrs. Crowther suffered excruciating pain and anguish; and there is still, according to her complaint, some slight residual.
She was hospitalized at Raceland following the accident from July 7 through July 26, 1954, when she was transferred to her home in Lafayette by ambulance, being thereafter confined to her bed, still in a cast. Within about two weeks, she commenced running a fever which caused her hospitalization commencing August 19, and ending September 22d, for a condition of subacute bacterial endocarditis; despite appellants' contrary assertion, the preponderant medical testimony is that this bacterial infection of the heart resulted from the entry of the infecting organisms through the compound fractures at the time of the accident, remaining dormant during the routine anti-biotic treatment during the initial hospitalization, but flaring up again on her return home. Her fever from this dangerous ailment ran as high as 103 to 104 degrees, and it was brought under control and cured only by her continuous hospitalization for 42 days during which she was treated with massive doses of penicillin (totalling 20,000,000 units) inserted in a continuous drip through a needle in her veins, which needle had to be changed every day or so as the vein previously utilized collapsed.
*93 Mrs. Crowther was confined in a cast for 2 ½ months, to a wheelchair about two months, to crutches about four months, and then to a full length weight bearing brace for about six months, terminating November 4, 1955, when another hip operation at Mayo's Clinic in Rochester, Minnesota, was performed. A bracket hip reconstruction was at this time performed, reconstructing the fractured hip. She was hospitalized until November 26, 1955, and was not released from the painful body cast until January 30, 1956, or after 95 days. She was again hospitalized at the Mayo Clinic from January 29, through February 18, 1956, for further procedures. Except for another minor surgical procedure on May 4, 1956, involving removal of the screws placed in her hip during the November, 1955, operation, Mrs. Crowther has remained home, undergoing physiotherapic treatment approximately one hour per day.
Dr. Sullivan's summary as to her present condition dated June 11, 1956, was admitted in evidence by stipulation of counsel:
"I last examined Mrs. Crowther on May 3, 1956 at the Clinic at which time I was very pleased with the results of her surgery performed on November 4, 1955. She has excellent motion, thus far, considering the original disability. Her abduction and rotation are limited about 25 per cent. Her chief limitation, however, is in flexion, at which time she now demonstrates about 45 degrees. She walks with a pivoting type of gait, but states that she has no pain, except over the trochanteric region, where the Steinmann pins could be felt deep in the muscle.
"X-ray examination of the old fracture of the femur looked satisfactory and it will be perfectly all right, so far as I can tell now. I would think that no further surgery will be necessary and we do hope that she continues to improve.
"I admitted Mrs. Crowther to the St. Mary's Hospital on May 3, 1956 and on May 4, 1956, I removed the two Steinmann pins from her hip. She was planning to return home for removal of her sutures and I asked her, if possible, to return in about a year for a recheck examination.
"`As I believe I mentioned while you were here, it is impossible to give the ultimate outcome in these cases, since many of them will go along quite well until degeneration of the hip occurs, at five or ten years following the injury. Many of them, of course, go much longer and it is our hope that Mrs. Crowther will fall into this group and have a useful hip for the rest of her days.
"At the present time, however, I think I would give a permanent disability rating of approximately 50 per cent of the left lower extremity."
The crippled gait requires the use of a cane in walking, although with the courage she manifested throughout this tortuous treatment Mrs. Crowther endeavors to walk without same for periodic intervals in order to aid in her rehabilitation. The physiotherapy, various and sundry rehabilitating exercises, awkwardness constitute a constant inconvenience hampering her enjoyment of a normal life. Mrs. Crowther retains certain disfiguring scars about her legs.
The District Court's summary stated:
"There is no dispute as to her having suffered extensive pain as a result of her injuries, nor can there be any as to the anguish of a young married woman in the full bloom of youth during her long period of immobilization as to the unhappy prospect of a shattered life. During that time her occupational social, recreational and marital life were in suspense, with only a *94 bare hope of revival. Her utter discomfort during her appearance in Court in February, 1956 was completely evident and clearly unfeigned."
Uncontradicted also is Dr. Sullivan's estimate of a permanent residual crippling amounting to loss of 50% of the left leg, with an awkward and cumbersome gait, with the distinct possibility that degeneration (necrosis) of the hip will set in within five to ten years.
While the award of damages is of necessity somewhat arbitrary, and the discretion of the District Court should not ordinarily be disturbed in such matters, yet we are likewise enjoined that awards should be made so that there is some degree of uniformity in cases involving similar injuries, after taking into account the great variation in circumstances surrounding each injury. See, e.g., Higginbotham v. Frazier, La.App. 1 Cir., 92 So.2d 89. We are of the opinion that the District Court's award of $70,000 for plaintiff's agonizing suffering, mental anguish, crippling permanent injuries, possibility of necrosis, and other personal injuries is excessive with regard to awards previously made for comparable injuries and should be reduced to $45,000. Marler v. State, La.App. 2 Cir., 78 So.2d 26, cert. denied; Preuett v. State, La.App. 2 Cir., 62 So.2d 686.
For the above and foregoing reasons, the trial court's award in favor of plaintiff is reduced to $45,000 plus legal interest, etc.; and as thus amended, is affirmed in all other respects.
Amended; and as amended, affirmed.
ELLIS, J., dissents.
Rehearing denied; ELLIS, J., dissenting.