ELLIS, Judge.
In deciding the case of Palmer et al. v. American General Insurance Company, La. App., 126 So.2d 777, we have set out the facts and circumstances by which this suit arose and the only question presented herein is as to quantum.
The record shows that Diane Wilcox was 14 years old at the time of the accident. She is an attractive young girl who suffered lacerations and fracture that will be hereinafter set out in detail. The lower court awarded George H. Wilcox $256 for medical expenses incurred; $20,000 to George H. Wilcox for the use and benefit of his daughter for personal injuries, pain and suffering, and disfigurement; and $650 for medical experts’ fees taxed as costs. Counsel for American General concedes that the award of $256 for medical expenses is correct.
Dr. Pullig, the first physician to examine Diane Wilcox, testified that his examination revealed, “several lacerations of the head, one about a four inch laceration above the right eye, extending posteriorly ‘above the ear. There was another laceration on the right posterior part of the skull. She had a laceration of the chin and she was unable to move her right arm, and the x-ray revealed a fractured right clavicle. X-ray also revealed a fracture of the left first rib. She was in a state of consciousness at the time I saw her, she was able to respond, and she remained conscious during the time of my examination.” Dr. Pullig also testified that Diane Wilcox suffered a linear skull fracture about three inches long.
Dr. Thomas Campanella, an orthopedic specialist, examined Diane Wilcox on September 11, 1959, almost a month after the accident which occurred on August 19, 1959. Dr. Campanella testified, “she had a laceration over the right forehead, the right pupil seemed to be considerably wider than the left and the patient had some facial disfigurement attributed to the scars and to the difficulty to the pupil in the eye. In addition; she had a palpable mass over the right side of the collar bone, right in the middle of her clavicle, and she had a sterno-clavicular dislocation right where the collar bone attaches to the sternum, or the breast bone, the bone apparently was out and displaced anteriorly. Also, the patient had a painful area over the left shoulder in front. Apparently, this was attributable to a bruise of the left shoulder. In addition, she had a small mass over the left shoulder, which measured approximately 1" x 1", and this, I felt, was probably due to contusion in this area, with some bleeding under the skin. Following this examination, P proceeded with the treatment and if you care to do so, I will go ahead.”
“Q. Yes, sir, I would like to know what treatment you rendered to this child. A. In order to reduce the sterno-clavicular *787 separation, I had to apply a sort of a body-plaster-of-paris jacket on her, holding the shoulders in hyperextension, or bent backwards in this manner — a position of attention, more or less, and this reduced the sterno-clavicular separation quite well and did improve the fractured clavicle, which unfortunately was end to end and could not be reduced without some surgical procedure. But, I felt that since she was a young child, 15 years of age and that the scar produced by doing an open reduction would be much more disfiguring than treating it end to end, and in addition, I felt she would get better results from a closed reduction rather than an open one. At any rate, I treated her for some six weeks. She was seen last on 10/26/59. I took x-rays of the clavicle and this was reduced and the sterno-clavicular joint was back in position.”
Dr. Dean Echols, an eminent neurosurgeon, examined Diane Wilcox six days after the accident on August 25, 1959, and later on October 12, 1959. The essence of Dr. Echols’ testimony is to the effect that the most severe consequence of the skull fracture was a concussion of the brain with no evidence of permanent damage. Dr. Echols further testified that there were possibilities of brain damage which might later cause epilepsy, or Jacksonion seizures, but the probabilities were that there would be no ill effects from the fractured skull.
When Dr. Echols examined Diane Wilcox on August 25, 1959, he observed that she was suffering from a Horner’s syndrome on the left side which was associated with the fracture of the first rib. In this regard, Dr. Echols testified as follows:
“Q. ‘Dr. Echols, you mentioned in your report that you made to Dr. Pul-lig a Horner’s syndrome on the left side, which was associated with the fracture of the first rib. Now, I wonder if you would explain to the court what that means.’ A. ‘The sympathetic nerve, which is on its way from the spinal cord to the arm and the head, lies right on the top rib, or first rib. The function of this nerve is to control the size of the pupil, to keep the upper eyelid elevated, and to control the blood vessels in the arm and one side of the head, and to control the sweat glands in one arm. So, if that nerve is paralyzed — as it was in this case, at least temporarily, Diane Wilcox had a small pupil on the side of the broken rib, she had a droopy eyelid on the same side, she did not perspire on the left side of her head or on her left upper extremity, and her left upper extremity on cool days was warmer than the right one — that is called Dr. Horner’s syndrome. Droopy eyelid, small pupil, and a dry arm and face.’
“Q. ‘Now, Doctor, what period of time would you require to make an absolute, positive prognosis that there will be no further sequela from Horn-er’s syndrome?’ A. ‘When I saw Diane Wilcox the second time in my office on October 12th, she no longer had a Horner’s syndrome and I was satisfied that she would never again hear from that nerve injury.’
“Q. ‘Is that type of an injury associated in any way at all with brain damage?’ A. ‘No, sir.’
“Q. ‘In other words, it stems from the broken rib, although of course, it has to go to the brain to relay its symptoms to the eye — is that the way the tiling works?’ A. ‘Yes.’
“Q. ‘The brain is just the middle organ and it relays the symptoms?’
A. ‘Yes.’ ”
In addition to the injuries testified to by the heretofore mentioned doctors, Diane Wilcox also suffered damage to two of her teeth; the upper right first molar and the lower left bicuspid. The upper right molar has since been repaired with amalgam and the lower left bicuspid has been restored with gold inlay.
Due to her injuries, Diane Wilcox was hospitalized for nine days; she missed two *788 weeks of school, and only went to school part time over a month. She was required to wear a cast for six weeks in order for her collar bone to heal. She suffered severe headaches for about two weeks after the accident and continues to be overly nervous and suffer from nightmares. Also, she experienced considerable pain in her neck for about two weeks after the accident. Apart from the effect on her nervous system, several scars which are hardly noticeable, and a small lump on her collar bone, Diane Wilcox made a remarkable recovery.
We have stated many times that the award of damages is somewhat arbitrary, and the discretion of the trial judge ordinarily should not be disturbed, we are also required to establish a degree of uniformity in cases involving similar injuries. See, e. g., Crowther v. Fenstermaker, La.App. 1 Cir., 1957, 96 So.2d 91; Higginbotham v. Frazier, La.App. 1 Cir., 1957, 92 So.2d 89. We are of the opinion that the District Court’s award of $20,000 for Diane Wilcox’s terrible pain and suffering and mental anguish, serious injuries, and some disfigurement with continuing nervousness is excessive and should be reduced to $10,000. See Ingram v. McCorkle, La. App. 1 Cir., 1960, 121 So.2d 303; Wilson v. Williams, La.App. 1 Cir., 1955, 82 So.2d 71.
As to fees for experts testifying on behalf of Diane Wilcox, counsel for American General contends that Dr. Campanella’s fee should be reduced from $200 to $75; Dr. Echols’ from $250 to $150 and Dr. Pullig from $200 to $50. It is not questioned that the trial court has wide discretion in fixing medical experts’ fees under LSA-R.S. 13:3666. This article provides that in fixing the compensation of expert witnesses the Court shall take into consideration “the value of the time employed and the degree of learning or skill required.” A specialist ordinarily requires a greater degree of skill or learning than does a general practitioner. ■
Dr. Pullig, a general practitioner, had to travel from Clinton to St. Francis-ville, a distance of some 25 miles, and testified for about 35 minutes. It was not shown that any of the medical specialists were detained in the court room for any considerable time prior to their testimony and in fact the record indicates that great precautions were taken to see that the doctors were not unduly detained. Under the circumstances, we feel that the award of $200 to Dr. Pullig was excessive and should be reduced to $100.
Dr. Campanella, an orthopedic specialist, had to travel a distance of 35 miles from Baton Rouge to St. Francisville and testified about 17 minutes. Under the circumstances, we feel that the award of $200 to Dr. Campanella should be reduced to $150.
Dr. Echols, an eminent neurosurgeon, had to travel from New Orleans to St. Francisville, a distance of some 115 miles, and testified for 42 minutes. Under the circumstances, the award to Dr. Echols should be reduced to $200, plus $25 travel expenses from New Orleans to St. Francis-ville, an amount Dr. Echols himself testified to as being sufficient for travel.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the District Court is amended by reducing the award to George H. Wilcox for the use .and benefit of his minor daughter, Diane Wilcox, from $20,000 to $10,000.
It is further ordered, adjudged and decreed that the judgment of the District Court awarding George H. Wilcox $256 for medical expenses incurred be affirmed.
It is further ordered, adjudged and decreed that th judgment of the District Court is amended by reducing the expert fees taxed as costs for Dr. Pullig to $100; Dr. Campanella to $150; and Dr. Echols to $200, plus $25 travel expenses.
Judgment amended and as amended affirmed.