SAVOY, Judge.
This is a suit in workmen’s compensation. On July 8, 1965, the plaintiff, Elton Holland, Jr., sustained an injury to his back while working in the course and scope of his employment with Curley Courville, who was insured by a workmen’s compensation policy issued by defendant, Coal Operators Casualty Company.
After a trial on the merits, the district court rendered judgment awarding plaintiff full benefits under the act, less a credit for amounts previously paid. All costs were assessed against defendant, including the expert fees of the doctors who testified in the case, which fees were set at $50.00 each. From this judgment the defendant has appealed to this Court. The plaintiff has answered the appeal requesting that the amount of the expert witness fee awarded Dr. George P. Schneider be increased from $50.00 to $350.00.
On the merits of this case, the sole issue presented for determination is the nature and extent of plaintiff’s disability. The defendant maintains that plaintiff failed to carry the burden of proving his disability, that there was no substantial conflict in the medical testimony, and that the lower court was in error in resolving the case by a consideration of the lay testimony. The plaintiff maintains that the judgment of the district court was well supported by the record and should be affirmed.
The record shows that on July 8, 1965, plaintiff sustained an injury to his back while employed as a truck driver and laborer for Curley Courville, who has a ready-mix concrete business in Mamou, Louisiana. The plaintiff was on the back of a trailer truck in the process of loading heavy concrete pipe, which was 24 inches in diameter by three feet in length, and was in a bent-over position when he felt a snapping pain in his back. His employer had him taken immediately to the emergency room of a hospital in Mamou where he was seen by Dr. Wayne La Haye, a general practitioner.
Dr. La Haye testified that plaintiff was suffering acute pain, and he administered an analgesia in the form of intra-muscular medication. He admitted plaintiff for a workup, and treated him over a period of time with muscle relaxants, diathermy, ultra-sound and general analgesics. Plaintiff was confined to the hospital under Dr. La Haye’s care for the period from July 8 to July 19, 1965. X-rays were taken at the hospital, which Dr. La Haye interpreted as normal. Dr. La Haye testified that he saw plaintiff on seven occasions after his release from the hospital. He seemed slightly improved during visits on July 23 and July 30, but returned on July 31, 1965, with complaints of numbness in both legs. Dr. La Haye prescribed two days bed rest, and then on August 2, 1965, he referred plaintiff to Dr. Robert Luke Bordelon, an orthopedic surgeon of Opelousas, Louisiana, for examination. After receiving a report from Dr. Bordelon, he saw plaintiff on three other occasions, but did not examine plaintiff again. He discharged plaintiff from further treatment as of September 14, 1965. Dr. La Haye felt plaintiff could return to light duty as of September 14, 1965, but that he could not handle heavy pipes at that time, and would have to gradually work up to more difficult work.
Dr. Bordelon testified he examined plaintiff on August 13, 1965, at the request of Dr. La Haye, and found plaintiff to be very cooperative. At the time, plaintiff was wearing a sacroiliac belt. Plaintiff described a pulling sensation with aching in the lower part of the back, and stated he had some weakness and numbness in his legs and knees, but there was no radiation of pain into the legs. The doctor noted that the right leg was one-half inch shorter than the left leg. There was no motor or *197 sensory loss of the lower extremities. Dr. Bordelon did note that right lateral bending was asymmetrical or not smooth. Straight leg raising was possible to 90 degrees on the left with some complaints of pain. Lumbosacral flexion produced complaints of pain, and lumbosacral extension did not. X-rays were taken of the lumbo-sacral spine with the plaintiff lying down in the AP lateral and oblique projections, and a spot lateral X-ray was made of the lumbosacral joint. Dr. Bordelon noted no abnormalities on the X-rays. He testified that the X-rays of the lumbosacral inter-space showed some relative narrowing, but that very often this interspace is narrower than the other interspaces, and that the condition was common enough where it was not considered an abnormality. He suggested that plaintiff begin exercises to loosen up his back and to speed his return to full recovery. He testified that if plaintiff did not take exercises or any form of therapy to help himself, he would probably continue to have pain. Such pain would not usually continue indefinitely, depending on the person and the pathology that was present. It was his opinion that plaintiff had received a lumbar strain, from which he was recovering, and that plaintiff could perform light labor at that time and would be able to return to heavy labor in four to six weeks. Pie felt plaintiff would experience pain when he started activity, but would have to increase activity as tolerated, up to the point where he was able to perform heavy labor. He did not believe plaintiff could perform heavy manual labor at that time. Since Dr. Bordelon had examined plaintiff only the one time, he was unable to state a definite date when plaintiff could return to heavy labor without difficulty.
. Dr. George P. Schneider, an orthopedic surgeon of Lake Charles, .Louisiana, examined plaintiff on September 28, 1965, and again on February 3, 1966, the latter examination being some eight days prior to the date of trial. At the first examination, plaintiff stated he had attempted to return to work on three occasions but was unable to continue employment because of the pain in his back, with radiation of the discomfort down through both thighs. Plaintiff indicated his back still hurt, and he noted radiation and discom-’ fort, and associated feeling of numbness radiating to the knees. He denied any previous back trouble. Doctor Schneider found trunk motion was moderately limited in all directions with complaints of low back discomfort, and he noted plaintiff had particular discomfort in coming from a forward flexion of the trunk to an erect position. The doctor stated this is commonly seen where there is a low back problem and is very frequently a relatively involuntary factor. Dr. Schneider found plaintiff to have a quite marked right pelvic tilt with inch shortening of the right lower extremity present. There was decreased perception to pin prick complained of over the lateral aspect of both thighs. Plaintiff complained of pain with the straight leg raising test and the passive trunk rotation test. Considerable discomfort was complained of on direct pressure exerted over the fifth lumbar level, extending down onto the level of the fifth lumbar interspinous ligaments between the first sacral segment, and upward moderately into the. level of the fourth lumbar interspinous ligament. Plaintiff complained of moderate discomfort on direct pressure exerted over both lumbo-sacral articulations. There was no evidence of involuntary spasms. The reflex and motor components appeared to be within normal limits in both lower extremities. X-rays were taken on September 28, 1965, and showed no evidence’ of abnormality of the bone or joint structure of the lower back, although there was a slight narrowing at the posterior aspect of the lumbosacral interspace, which Dr. Schneider felt was relatively within normal limits. After this examination, it w;as the doctor’s opinion that the plaintiff had sustained a tearing injury at the level pf the fifth lumbar interspinous ligament be *198 tween the fifth lumbar spinous process and the first sacral spinous process, and he felt that this was responsible for plaintiff’s persisting manifestations of disabili- ■ ty. He believed that plaintiff was still disabled at that time' and needed further - treatment. He recommended that a com- ■ pensatory wedge be applied in the right shoe, since he believed that the pelvic tilt was probably an aggravating factor in i prolonging plaintiff’s recovery. He also recommended the local, injection of an ■ anesthetic agent, in conjunction with the use of a cortical steriod or cortisone-type • preparation, and the use of a lower back ■ support. His prognosis was that plaintiff could be expected to recover in three or four months with no residual disability. ' Dr. Schneider examined the plaintiff again on February 3, 1966, and obtained a history that plaintiff used the shoe elevation but had no further treatment since his last visit. Plaintiff attempted to work driving a concrete truck, but was unable to continue because of pain resulting from ■ the performance of this activity. On this examination the doctor found plaintiff had more complaints of pain in taking the various tests involved. Toe walking gave rise to a pulling sensation in his lower back. . Trunk flexion was good, but again when he attempted to resume the erect position he complained of pain, and there was not- ■ ed an involuntary flattening of the lumbar curve taking place. At this time extension of the trunk was also painful. There were again complaints of decreased perception of pin prick of the lower extremities, primarily over the dorso medial aspect of the left foot and the left big toe, onto the medial aspect of the ankle and leg. Reflex components were found to be intact and no evidence of muscular weakness was present. The shortening of the right lower extremity was noted to be unchanged. Considerable discomfort was complained of on palpation over the fifth lumbar and first sacral segments, and to the right and left over the erector spinae muscle masses and underlying articulations at this level, which would be consistent with the lumbosacral interspace and the tenderness noted on the previous examination. Dr. Schneider indicated that he put plaintiff through various exclusion type tests to determine whether there was any attempt on the part of .plaintiff to mislead him. There was no abnormal response to these tests, and plaintiff was consistent in his complaints. Fie did not feel plaintiff made any effort to mislead him in the examination. New X-rays were taken on February 3, 1966, which Dr. Schneider interpreted as revealing definite marked narrowing at the posterior aspect of the lumbosacral inter-space. He thought this had definitely increased on comparison with the initial films taken on September 28, 1965.' It was his -opinion that a degenerative process was taking place at the lumbosacral inter-space as a result of the injury to that area, which was producing the pain and disability. He felt the pain was severe enough to be disabling. It was Dr. Schneider’s opinion that plaintiff would have to have an operation before he could be rehabilitated to return to his usual type of employment. The operation would be a spinal fusion to stabilize the offending area where this degenerative process is taking place to prevent it from progressing further. Without surgery, the doctor felt plaintiff’s disability would increase with the passage of time. He felt plaintiff was disabled from performing heavy manual labor, as any increased activity would worsen the condition and produce substantial pain.
The testimony of Dr. Daniel M. Kings-ley, an orthopedic surgeon of Alexandria, Louisiana, was taken by deposition ten days after the trial. He testified he examined plaintiff on October 18, 1965, at the instance of the defendant. He indicated he had difficulty getting information from plaintiff, and that plaintiff’s complaints were vague and conflicting. He felt plaintiff was exaggerating his complaints. It was his opinion that the pattern of complaints and his findings did *199 not correspond to any particular syndrome, and lie concluded there was nothing wrong with plaintiff. Dr. Kingsley took six X-rays of plaintiff and felt these were completely normal, with only the very minor deviations in bone structures such as were ordinarily seen. He felt there was no objective evidence of disability. Dr. Kingsley examined the X-rays taken by Dr. Schneider on September 28, 1965 and February 3, 1966. He indicated the first X-ray showed there was some narrowing of the lumbosacral joint, it being narrower posteriorly than it was anteriorly, hut indicated that everyone has a narrower lumbosacral joint, which was a normal type joint, with the usual amount of narrowing. He indicated that the later X-ray was taken from a different angle, but felt that the two X-rays did provide a basis for comparison, and by making allowances for the technical changes from the taking of the two films, he gave an opinion that there was no degenerative change shown and that the second X-ray did not show any increased narrowing of the lumbosacral joint involved. From his examination of all X-rays, it was his opinion that none of these showed any signs of a change in the interspace at the lumbo-sacral joint. He did not believe that the plaintiff had pain which was disabling, and felt plaintiff could return to his previous employment. He admitted that if plaintiff did in fact have a degenerative back condition, such as a narrowing of a lumbar interspace, that such condition could he remissive. Although he did not think that it was probable, he conceded the possibility that plaintiff could have had some degenerative condition in his hack, which did not show up in the examination made on October 18, 1965.
During the trial, Dr. Robert Luke Bor-delon also examined the two X-rays taken by Dr. Schneider. He indicated there was a slight or minor change between the two with reference to the narrowing of the lumbosacral interspace, hut he felt that the change was caused due to the angle of projection in which the X-rays were taken, rather than a change within the in-terspace itself. From his examination of all X-rays, it was his opinion that there was no abnormal narrowing of the lum-bosacral interspace. He stated the question of abnormality is one of interpretation, and that plaintiff’s case could be a borderline of normal, and such a condition would be common to many many people who did not have any difficulty or reason for a narrowed interspace. He indicated that to consider the X-rays taken by Dr. Schneider as being abnormal, this X-ray would have to be compared with an X-ray taken before the injury, which would show the particular interspace to have been wider. It was his opinion that the two X-rays taken by Dr. Schneider could not be used comparatively so as to interpret a narrowing in the lumbosacral interspace.
Since the deposition of Dr. Kingsley was taken after trial, plaintiff was allowed the right of rebuttal. For this purpose, a stipulation was introduced into evidence that if Dr. Schneider was present in court for rebuttal testimony on behalf of plaintiff, he would testify as follows: That he reviewed the X-rays of plaintiff taken by Dr. Bordelon, the two sets of X-rays previously taken by himself, and the X-rays taken by Dr. Kingsley, and that based upon his examination of these X-rays, it was his opinion that there was a definite posterior narrowing at the lumbosacral interspace of a considerably more advanced degree than would be considered within normal limits. Further, that comparison of the earlier X-rays with the X-rays taken on February 3, 1966, revealed the narrowing to be persisting and somewhat more in degree. It was his opinion that plaintiff is suffering from a degenerative process of the intervertebral disc at the lumbosacral level and that this condition is the cause of persisting disability as precipitated by the episode of trauma. Further, it was his opinion that the comparison of X-ray examinations reveals a degenerative proc- *200 css taking place at the lumbosacral level precipitated by trauma, that a spinal fusion is the procedure of choice in order to rehabilitate plaintiff to his usual type of employment, and until this is carried out, the disability referable to the lower back will persist.
^ The record also shows that plaintiff is 33 years of age, is married and has four children. He attended college for three years. Since leaving school, he has worked regularly, and has worked steadily for Curley Courville since 1960 until the time he was hurt. He testified he had been unable to do any type of sustained work since his injury, and that when he did try some limited work, his back gave him considerable trouble and he had to stop. At the special request of Curley Courville on a large job at a rice drier, plaintiff worked for a short time in the month of December, 1965, driving a concrete truck, and earned $57.50. During this time he had considerable trouble with his back, and eventually had to stop working. Plaintiff has not worked anywhere else since his injury. Several co-workers and character witnesses testified at the trial that plaintiff had been a good worker and provider, and had been steadily employed prior to his injury, and that plaintiff would go to work if he was able to do so. The record also shows that plaintiff had never been injured or had any difficulty with his back prior to July 8, 1965.
^ The district court found the medical evidence to be conflicting, and resorted to the lay testimony to resolve the conflict. The district court observed the demeanor of the witnesses, and particularly the demeanor of the plaintiff, and did not believe that he was faking an injury. The district court concluded that Dr. Schneider was correct in his diagnosis that plaintiffs original back injury caused a degenerative process to set in the lumbo-sacral vertebrae, and that plaintiff would be disabled until he had an operation.
After carefully reviewing the record, we agree with the holding of the district court that there was a conflict in the medical evidence. Dr. Bordelon saw plaintiff only one time and then on August 13, 1965. After receiving the report from Dr. Bor-delon, Dr. La Haye did not give plaintiff another full examination, but relied on the report and discharged the plaintiff as of September 14, 1965. It is noted that as of the time Dr. La Haye and Dr. Bordelon last saw the plaintiff, they were both of the opinion that he was still disabled from performing heavy manual labor, although they both believed he would be able to return to such activity within a relatively short period of time. Dr. Kingsley examined plaintiff on October 18, 1965, and found no objective evidence of disability. Although plaintiff made complaints of pain, the doctor did not believe there was anything wrong with him. Dr. Schneider, on the other hand, found plaintiff to be disabled on both examinations of September 28, 1965 and February 3, 1966. At the time of the first examination, Dr. Schneider believed plaintiff would recover within three or four months. However, at the time of the last examination, February 3, 1966, he found plaintiff would need an operation before recovery could be expected.
The defendant maintains the only objective evidence presented as to plaintiff’s disability was the X-rays taken by Dr. Schneider, and that the record shows that Dr. Schneider was in error in interpreting these X-rays. We find the record shows simply a conflict between medical opinions mainly as between Drs. Kingsley and Schneider. These opinions were based on varying interpretations of findings made in their examinations, and in their individual judgments as to what constituted “normal” or “abnormal” limits of narrowing of the interspace of the lumbosacral joint as seen in the X-rays. We consider this is an area where reasonable minds can differ.
Under the medical evidence as presented, it was necessary for the district court to determine whether the plaintiff *201 •was, in fact, telling the truth. Of the doctors, only Dr. Kingsley believed that plaintiff was exaggerating. The district court believed plaintiff was telling the truth and resolved the conflict in the medical evidence by considering the lay evidence as to plaintiff’s disability. We find that this was proper in this case.
The law applicable in this instance is found in the case of Ware v. J. Ray McDermott & Co., (La.App., 3 Cir., 1965), 180 So.2d 573, at page 577:
“In reaching our decision in this case, we must follow the guidelines laid down by the Supreme Court. Where there is a conflict in the evidence, the reviewing court should not reverse the judgment of the district court where there is evidence in the record which, when reasonably construed, supports the conclusions reached by the district judge. See Reed v. Fidelity and Casualty Company of New York, (La.App., 3 Cir., 1960), 125 So.2d 465, and cases therein cited.
Inasmuch as the record supports the conclusions reached, we find no manifest error in the holding of the district court that plaintiff is disabled under the provisions of the Workmen’s Compensation Act.
At the end of the trial, the defendant moved to have the plaintiff re-examined by Dr. Kingsley before the deposition of Dr. Kingsley was taken. Plaintiff objected, and the district court refused the motion. In its brief, the defendant has asked this Court to remand the case with instructions to permit new X-rays to be taken by Dr. Kingsley or another orthopedist and to permit new testimony relative to the dispute as to the narrowing in the lumbosacral interspace in plaintiff’s back. We find that the district court acted within its discretion in refusing a medical examination after the day of trial. Although the defendant was not aware of the last examination by Dr. Schneider eight' days before tria?, such an examination of a plaintiff prior to trial is not uii-usual. The defendant could have requested another examination of plaintiff a reasonable time prior to trial, but failed to do this. The record shows that defendant had planned to have Dr. Kingsley testify at the trial, but he failed to appear. No arrangements were made or requested for any depositions of the doctors prior to the day of trial. Since the Workmen’s Compensation Act provides the defendant, with an opportunity to reopen the case every six months to question the plaintiff’s disability, we do not find that the facts of this case justify a remand for further evidence.
We will now consider the issue raised by the answer to the appeal. The district court awarded an expert fee of $50.00 for the testimony of Dr. George P. Schneider. The record shows that Dr. Schneider lost the better part of a day from his office, when he traveled approximately 180 miles to appear in court, where he testified on the witness stand for over an hour. Plaintiff maintains that the award of $50.00 is manifestly inadequate and should be increased to $350.00, and cites Cormier v. Traders & General Insurance Company, (La.App., 3 Cir., 1964), 159 So.2d 746; Wilcox v. American General Insurance Company, (La.App., 1 Cir., 1960), 126 So.2d 785; and Gillis v. Great Atlantic & Pacific Tea Company, (La. App., 1 Cir., 1957), 95 So.2d 186. Considering the awards given in other cases, we agree that the amount assessed by the district court was clearly inadequate, and find that it should be increased to $200.00. See Pittman and Matheny v. Davidge, (La.App., 1 Cir., 1966), 189 So.2d 706.
For the reasons assigned, the judgment of the district court is amended by raising the amount of the expert fee of Dr. George P. Schneider from $50.00 to $200.-00, and as amended, the judgment is affirmed. All costs of this appeal are assessed against the defendant.
Amended and affirmed.