MILLER, Judge.
Plaintiff, Jimmy Wade, sued defendants, Railroad Maintenance & Construction, Inc. and its insurer, Liberty Mutual Insurance Company for workmen’s compensation benefits arising out of an accident allegedly occurring on April 2, 1969 while plaintiff was in the employ of Railroad Maintenance & Construction Inc. After a trial on the merits, the district court rendered judgment in favor of defendants and dismissed plaintiff’s suit on the grounds that plaintiff failed to prove that he sustained an injury on April 2, 1969 which could be' causally related to his subsequent throm-bophlebitis. Plaintiff appeals to this Court.
We agree with the decision of the trial court.
Plaintiff has been a manual laborer all of his life. In May, 1967, he suffered from thrombophlebitis of the left leg from which he recovered and continued to work without incident until April 2, 1969. On that date, while lifting a crosstie onto the back of a flatbed truck with two fellow employees, he slipped causing the crosstie to allegedly strike him in the upper left thigh or lower abdominal area. He reported the accident to his supervisor and was sent to the office of Dr. Luke Marcello in De Ridder at the end of the workday. He told Dr. Marcello he slipped and strained his left side and complained of pain in his left groin and lower abdomen. *170 Dr. Marcello did not find any objective evidence of injury and released plaintiff to return to work. He continued to work until April 14, 1969. On April 17 he entered the Lake Charles Charity Hospital where his condition was diagnosed as a deep thrombophlebitis of the left calf region and a serious effusion of the left knee, etiology undetermined. He remained in the hospital approximately one month. Since his release he has not attempted to return to his previous employment.
The crucial issues are whether plaintiff suffered a compensable accident as a result of the incident of April 2, 1969 and, if so, was this accident the cause of or a precipitating factor in the recurrence of plaintiff’s thrombophlebitis.
When called to testify plaintiff stated that on the date of the accident it had been raining and the ground was slick. While attempting to bring one end of a crosstie up to the truck, he slipped and the tie struck him on the upper part of his left leg or thigh. Shortly after being struck he began to experience pain in the upper portion of his left thigh. He informed his supervisor, Jesse Mungia, that he had been hurt and Mungia sent him to see Dr. Luke Mar-cello in De Ridder at the end of the workday. He testified that Dr. Marcello informed him that nothing was wrong with; that he would be “a little sore”, and he gave him some pills. He testified that the next day his leg was swollen from the upper part of his thigh down to his left knee. He stated he informed Mungia that he was in pain and was told by Mungia to just be present on the job and he would be credited for the time worked. He said this was the arrangement he worked under until April 14, 1969 at which time he quit his labors because the hurting in his leg was too intense. He claims the leg has continued to bother him, even to the date of the trial, and at times becomes swollen and he cannot walk.
Mungia denied that plaintiff ever informed him that he could not work. It was his testimony that the day after the accident plaintiff told him he was “still a little sore” from the day before and showed him some pills given to him by Dr. Marcello. That was the extent of plaintiff’s complaints to him. He testified he never assigned plaintiff to light work and worked him every day on full duty. He produced his work records which showed plaintiff worked every workday from April 2 through April 14, 1969. On cross-examination, he did admit the men worked in teams building a railroad track and that he usually left it to the team to determine who would perform a particular task. Accordingly, if one man had a particular complaint, the group could possibly allow him to do light work. However, he was adamant in his position that he had never assigned plaintiff to light work.
Efrin Brown and Will Jinner, the two employees who were helping plaintiff load the ties, both testified that when plaintiff slipped the crosstie struck him on the upper inside of the left leg or thigh. They both testified that following the accident plaintiff was having difficulty with his left leg in that he could not perform heavy labor as before. They stated that he limped on the job and was obviously favoring the leg.
As stated earlier, Dr. Luke Marcello saw plaintiff on the afternoon of April 2, 1969. He testified that plaintiff complained to him that he had hurt his left groin or lower abdomen. Plaintiff did not complain of hurting in his leg. In his examination of plaintiff, Dr. Marcello did not observe any evidence of trauma either to his abdomen or to his leg. He stated that plaintiff told him that he had been loading crossties and had slipped and “strained” his left side. Dr. Marcello said he was concerned with the possibility of a hernia from the complaints given by plaintiff and told him to return if there were any objective signs of injury. When asked whether he would deny the possibility of a causal connection between the accident and the swelling if in *171 fact plaintiff’s leg became swollen the next day, Dr. Marcello replied:
“A. I would think so, as far as I could tell from what I saw of the man, I’d say I couldn’t see any connection.
Q. You would say there was no connection whatsoever?
A. As far as I can tell, because I would say there was no injury the day before. I mean, that is what I have to go by — just what I found.”
After his release from the hospital, plaintiff was seen by Dr. William G. Streete, a general surgeon in Lake Charles, who examined him on three occasions in July and August of 1969. Dr. Streete stated that on the first visit plaintiff gave him a history of having been struck by a cross-tie in the lower abdomen. He stated that he worked the next two days in pain and the third day he could not get up. He then went to Charity Hospital where he Was hospitalized for one month for a blood clot. He complained to Dr. Streete of pain in the groin and that he had been impotent since his accident. An examination found a tender left groin. There was no evidence of hernia or of thrombophlebitis. Dr. Streete’s diagnosis was a tender left testicle which he treated with analgesics and a scrotal support. He was seen on the 4th and 28th of August and his complaint was again of soreness in the left groin. He was discharged by Dr. Streete on August 28, 1969.
When asked by counsel for plaintiff if there was any causal relation between the incident of April 2 and plaintiff’s subsequent thrombophlebitis, Dr. Streete originally testified he felt there could be. This opinion was based on the history given by plaintiff that he had worked only two days following the injury. However, when asked a hypothetical question by counsel for defendant based upon the premise that there were no objective signs of trauma found by Dr. Marcello on the date of the accident and that plaintiff continued to work until April 14, Dr. Streete stated that upon these facts he would have to conclude that there could be no causal connection. In his opinion any injury to plaintiff’s groin area would manifest itself promptly and if there were no immediate signs of trauma this -would decrease substantially the possibility that there was any traumatic injury to his groin. This, coupled with the fact that plaintiff worked for two weeks following the accident, rendered it highly improbable in his opinion that the throm-bophlebitis was related to the April 2, incident.
Plaintiff was examined by Dr. Irving Singer, a specialist in internal medicine, on December 16, 1969. At that time plaintiff complained to Dr. Singer of a mild tenderness of the left groin. His examination found no enlargement of the groin and the tenderness was not acute. He stated that plaintiff denied having any symptoms in either his leg or. knee and informed him that he experienced no further swelling in his legs and no pain since his discharge from the hospital. He said that plaintiff gave him a poor account of the events that had transpired but from what he could understand plaintiff was struck in the supra pubic area by a crosstie. The next day he was sore in that area but continued to work. He informed Dr. Singer that on the third day after the accident his legs became swollen and he could not get up and at that time he went to the hospital. When Dr. Singer pointed out that the records from Charity Hospital reflected that plaintiff entered on the 14th of April, plaintiff’s response was vague and uncertain.
Dr. Singer testified that deep veined thrombophlebitis is the result of either a direct trauma in the area of the vein which later becomes inflamed or results when an area of the body becomes “traumatized” as in the instance where one is bedridden following severe injuries and thrombophlebitis developes. In the instance where throm-bophlebitis is caused by direct trauma, it was his opinion that the trauma would clearly manifest itself at the time of the *172 injury, and in the immediate area where the thrombophlebitis subsequently occurs. Since there was no evidence of immediate trauma to plaintiff’s abdomen or upper leg areas, Dr. Singer was of the opinion that there was no causal relationship between the incident and the thrombohplebitis. He further stated that even assuming a traumatic injury to the supra pubic area, it would be highly unlikely that a blow to this area would produce thrombophlebitis in the calf region because of the distance between the area struck and the area of inflammation.
Dr. George M. Anderson, who specializes in internal medicine and cardiology, saw plaintiff on January 1, 1970 and again on February 7, 1970. In his initial examination plaintiff appeared physicially normal. At the second examination Dr. Anderson noted there was one plus pretibil edema of the left lower leg and plaintiff has some swelling and fluid in his left knee. He said he was not certain whether the swelling of thp knee was a residual of the thrombophlebitis or was secondary to the fluid plaintiff had experienced in his knee. For that reason he suggested that plaintiff consult an orthopedist. He stated that plaintiff gave him a history of having been struck in the inner aspect of the left upper thigh. It was his opinion that considering the area in which plaintiff informed him he was struck, there was a causal relationship between the trauma and the resulting thrombophlebitis. Contrary to the opinion of the other two specialists, Dr. Anderson is of the opinion that external manifestations of trauma do not necessarily have to occur for one to sustain a deep vein thrombophlebitis. However, Dr. Anderson stated that regardless of whether the' effusion of the knee was a complication of thrombophlebitis, he did not feel that plaintiff was suffering any disability and could return to work.
The jurisprudence of this state has recognized that an appellate court should not reverse the trial judge’s findings and conclusions as to the facts unless it is apparent the trial judge has committed manifest error. Lucius v. Stonewall Ins. Co., 215 So.2d 843 (La.App. 3 Cir. 1968); Clevinger v. Continental Insurance Companies, 211 So.2d 718 (La.App. 2 Cir. 1968); Holland v. Coal Operators Casualty Co., 191 So.2d 195 (La.App. 3 Cir. 1966); and Page v. Home Indemnity Co., 168 So.2d 409 (La.App. 3 Cir. 1964). After careful review of the evidence, we do not. find manifest error in the decision of the trial court judge.
Both Dr. Streete and Dr. Singer were of the opinion that immediate evidence of trauma would have occurred if plaintiff had received an injury of the magnitude necessary to cause deep veined thrombo-phlebitis. The fact that plaintiff worked for two weeks. following the accident coupled with the lack of objective evidence of trauma convinced these physicians there was no causal connection between the incident and plaintiff’s subsequent condition. Although Dr. Anderson felt a causal relationship had been shown, his opinion was predicated upon the truthfulness of the history given to him by plaintiff that he had been struck on the inner aspect of the left upper thigh. Dr. Marcello positively testified that he found no evidence of trauma when he examined plaintiff on the afternoon of the accident. In fact, he was more concerned about the possibility of a hernia than, a trauma because plaintiff had complained of straining his left side and had mentioned nothing about receiving a blow. In view of the immediate proximity in time of plaintiff’s alleged injury and his examination by Dr. Marcello, we are convinced that the complaints made to Dr. Marcello more accurately reflect the true nature of plaintiff’s condition. He has not carried the burden of proving by a. preponderance of the evidence that he sustained an injury on April 2 which caused or precipitated the subsequent thrombophlebitis.
The judgment of the trial court dismissing plaintiff’s suit is affirmed. Plaintiff-appellant shall pay all costs.
Affirmed.