DOMENGEAUX, Judge.
On October 7, 1970, plaintiff was employed by defendant, Tri-Parish Progress, Inc., as a maintenance man at a salary of $75.00 per week. In the course of his duties as such he was engaged in unloading a heavy metal desk from a pickup truck with the assistance of two other men. The desk slipped and plaintiff, who was standing on the ground waiting to receive it, was injured when he made an effort to prevent its falling to the ground.
He filed this workmen’s compensation suit against his employer and its insurer, Rockwood Insurance Company, and obtained a judgment condemning the defendants to pay him the sum of $48.75 per week for 500 weeks, plus his medical expenses, subject to a credit for monies already paid. The defendants appealed to this court.
On the day of the accident plaintiff consulted his regular physician, Dr. J. W. Faulk of Crowley, Louisiana. The doctor testified that when he saw plaintiff the latter was, “ . . . more or less doubled over and just seemed to be in acute pain.” He examined plaintiff and found tenderness in the low back area accompanied by moderate to severe muscle spasm. Although plaintiff was also complaining of pain in the left knee, there was no objective evidence of an injury thereto. At that time the doctor concluded that plaintiff was suffering from a strain of the left sacroiliac and left knee. He treated plaintiff, primarily with muscle relaxants, until May 25, 1971. During that time plaintiff’s back and knee gradually improved and for most of that time the doctor could find no objective symptoms of injury. Accordingly, on January 23, 1971, he released plaintiff as being able to return to work, although plaintiff visited his office several times after that date. Dr. Faulk testified that he had been plaintiff’s physician for more than ten years and that he had no prior history of back trouble. Significantly, he also stated that in reaching his conclusions regarding plaintiff, he considered only his objective findings and disregarded all subjective complaints.
Prior to releasing plaintiff, Dr. Faulk suggested the desirability of an orthopaedic consultation, and on January 5, 1971, plaintiff was examined by Dr. Fred C. Webre, *137 an orthopaedic surgeon in Lafayette, Louisiana. Dr. Webre stated that plaintiff complained to him of low back pain which radiated into both buttocks and was increased by coughing or sneezing. Additionally, he complained of a weak feeling in both lower extremities, but he considered his knee injury to be healed.
Dr. Webre performed a physical examination, including a number of medical tests, and concluded that there was no objective evidence to substantiate plaintiffs complaints. He observed nothing that would indicate a ruptured disc and he opined that the plaintiff was not disabled. Dr. Webre saw the plaintiff only that one time, and did not treat him.
On October 7, 1971, plaintiff was examined by Dr. Heinz K. Faludi, a neurosurgeon practicing in Shreveport, Louisiana. Having heard the plaintiff complain of low back pain and relate the history of sudden exertion accompanied by pain in the low back, the doctor conducted his examination, which included a number of tests. He found plaintiff to have a reduced lordosis, a slight scoliosis, some muscle spasm, a diminution of lumbar motions, less than normal response to straight leg raising, and some minor sensory diminution. All of these findings, when combined with the history related by plaintiff, were considered by Dr. Faludi to be suggestive of disc pathology. Accordingly, on November 16, 1971, he performed a myelogram on plaintiff.
The myelogram revealed that plaintiff had an unusually narrow neuro-canal, a condition found in approximately twenty percent of the patients who undergo that procedure, and one which is not considered pathological. At the L-5 to S-l level, however, the canal narrowed down even more severely, with a mild indentation coming from the right. The doctor did not think that this was necessarily indicative of a herniated disc but he felt that it could be and that appeared to be his main diagnosis. It could also indicate pathology of another sort such as adhesions, or an area of an old hemorrhage, but in any event it was an abnormality that warranted further investigation. With that purpose in mind the doctor suggested exploratory surgery, but the plaintiff was not receptive to the idea.
At the time of giving his testimony Dr. Faludi considered plaintiff to be disabled from returning to the type of work that he was doing when he was injured, involving heavy lifting, because of the abnormality in his lumbar area. When it was suggested to the doctor that the abnormality might be congenital, he expressed the opinion that this was not likely as it would be asking for too many coincidences. Rather Dr. Faludi opined that, assuming the correctness of the history given him by plaintiff, the defect and consequent disability were related to the accident of October 7, 1970.
The plaintiff himself testified that he felt the pain in his lower back immediately upon catching the falling desk. He stated that the he has been in pain, taking medication, and disabled ever since. He wears a back support, and often uses a walking cane to assist him in moving about. He has done no work since the occurrence of the accident, is unable to do even simple chores around the house, and is afraid of even so minor an exertion as standing for any length of time.
His testimony was corroborated by that of his father, who was present when the accident occurred, and with whom he lives, and by his cousin who sees the plaintiff on a daily basis. Both of these gentlemen testified to plaintiff’s inability to do any manual labor since the accident of October 7, 1970, as opposed to his good health prior thereto.
There is, then, no question but that plaintiff injured his lower back, while in the course and scope of his employment, on October 7, 1970. There is, however, a con *138 flict in the medical evidence regarding his continuing disability or lack thereof. Doctors Faulk and Webre can find no objective evidence to substantiate the plaintiff’s complaints whereas Dr. Faludi is of a different opinion. Under these circumstances it is proper to consider the lay testimony on the subject. Vidrine v. U. S. Fidelity & Guaranty Co., La.App., 205 So.2d 178; Holland v. Coal Operators Casualty Co., La.App., 191 So.2d 195; Joyner v. L. L. Brewton Lumber Co., La.App., 171 So.2d 811.
The lay testimony is unequivocably in favor of plaintiff’s position, and, taken alone, leaves no doubt of his continuing disability. It finds support in at least one of the medical opinions. Hence we cannot say that the trial court committed manifest error in holding that plaintiff, at the time of trial, was totally and permanently disabled for purposes of the workmen’s compensation law. LSA-R.S. 23:1021 et seq. There being no manifest error, we are compelled to affirm that holding.
For the above and foregoing reasons the judgment of the district court is affirmed at the cost of defendants-appellants.
Affirmed.